JFL

①

THE McCLAIN FIRM
BY: Cary B. McClain, Esq.
Attorney ID 70720
BY: Robert M. Abernethy, Esq.
Attorney ID 326776
901 Stony Lane
Gladwyne, PA 19035
(610) 649-6191

Attorney for Plaintiff

*Jury Trial Demanded*
*Assessment of Damages*
*Hearing Required*

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIN AND TIFFANY McMAHON, Husband and Wife 16042 Fox Cub Circle Milton, DE 19968 | : CIVIL ACTION : : No.    5:19cv5292 : : |
| AND | : : |
| SEAN McMAHON 22190 Jefferson Road Lincoln, DE 19960 | : : : |
| Plaintiffs, | : : **FILED** |
| | : **NOV 08 2019** |
| v. | : KATE BARKMAN, Clerk : By_____ Dep. Clerk |
| ROCKWELL TACTICAL GROUP, LLC 1151 Beaver Valley Pike Lancaster, PA 17602 | : : : |
| AND | : : |
| THREAT ASSESSMENT AND TACTICAL SOLUTIONS GROUP, LLC 103 Kraemer Avenue Stroudsburg, PA 18360 | : : : : : |
| AND | : : |
| JARED ROSS 234 Springview Road Carlisle, PA 17015 | : : : |

AND                                     :
                                        :
BRANDON KEHR                            :
125 Elizabeth Street, Apartment A       :
East Stroudsburg, PA 18301              :
                                        :
AND                                     :
                                        :
CODY SAYLOR                             :
2033 Pennsylvania Avenue                :
Allentown, PA 18109                     :
                                        :
AND                                     :
                                        :
PRIMAL DEFENSE TRAINING, LLC            :
2061 Auden Lane                         :
Allentown, PA 18104                     :
                                        :
AND                                     :
                                        :
NATHAN MURR                             :
113 North Liberty Street                :
Lititz, PA 17543                        :
                                        :
AND                                     :
                                        :
TRUE NORTH CONCEPTS, LLC                :
805 East College Avenue                 :
Elizabethtown, PA 17022                 :
                                        :
AND                                     :
                                        :
JOSHUA PRINCE                           :
646 Lenape Road                         :
Bechtelsville, PA 19505                 :
                                        :
AND                                     :
                                        :
PRINCE LAW OFFICES, P.C.                :
RD1, BOX 73                             :
Bechtelsville, PA 19505                 :
                                        :
AND                                     :

2

```
                                              :
CIVIL RIGHTS DEFENSE FIRM, P.C.               :
934 E. Hight Street                           :
Pottstown, PA 19464                           :
                                              :
AND                                           :
                                              :
TKD Properties, LLC                           :
1411 Chipperfield Drive                       :
Stroudsburg, PA 18360                         :
                                              :
AND                                           :
                                              :
JOHN DOE                                      :
                                              :
                    Defendants                :
```

## COMPLAINT IN CIVIL ACTION

## THE PARTIES

1.      Plaintiffs Darin McMahon (hereinafter referred to as "Plaintiff" and or "Darin

McMahon") and Tiffany McMahon (hereinafter referred to as "Tiffany McMahon") are husband

and wife adult individuals who reside at 16042 Fox Cub Circle, Milton, DE 19968.

2.      Plaintiff Sean McMahon is an adult individual who resides at 22190 Jefferson

Road, Lincoln, DE 19960.

3.      Rockwell Tactical Group, LLC. (hereinafter referred to as "RTG") is a business

entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania

with a corporate headquarters located at 1151 Beaver Valley Pike, Lancaster, PA 17602,

Lancaster County, Third Circuit, Eastern District of Pennsylvania, and its principal place of

business located at 1685 Baltimore Pike, Gettysburg, PA 17325, and at all times material herein

owned, possessed, maintained and controlled, by and through its duly authorized agents,

servants, workmen or employees a tactical defense and safety training operations and services the particulars of which are described below.

4.      Threat Assessment and Tactical Solutions Group, LLC. (hereinafter referred to as "TATS") is a business entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a corporate headquarters and principal place of business located at 103 Kraemer Avenue, Stroudsburg, PA 18360, and at all times material herein owned, possessed, maintained and controlled, by and through its duly authorized agents, servants, workmen or employees a reality based training simulated force-on-force scenario tactical training facility (hereinafter referred to as "TATS" and/or the "shoothouse"), the particulars of which are described below.

5.      Cody Saylor (hereinafter referred to as "Saylor" or "Defendant Saylor") is an adult individual residing at 2033 Pennsylvania Avenue, Allentown, PA 18109, Lehigh County, Third Circuit, Eastern District of Pennsylvania and  at all times material hereto, the Defendant acted or failed to act as an agent, servant, workman and/or employee who was then and there acting within the scope of his authority and course of his employment with Defendant RTG, TATS and Primal Defense Training, LLC, on behalf and in furtherance of the business of Defendant RTG, TATS and/or Primal Defense Training, LLC.

6.      Primal Defense Training, LLC. (hereinafter may be referred to as "Primal") is a business entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a corporate headquarters and principal place of business located at 2061 Auden Lane, Allentown, PA 18104, Lehigh County, Third Circuit, Eastern District of Pennsylvania and at all times material herein was owned, operated, maintained and controlled by

4

and through its duly authorized agents, servants, workmen or employees and Defendant Saylor, conducting business as a firearms instructor.

7.     Nathan Murr (hereinafter referred to as "Defendant Murr" or "Murr") is an adult individual residing at 113 North Liberty Street, Lititz, PA 17543, Lancaster County, Third Circuit, Eastern District of Pennsylvania, and at all times material hereto, the Defendant acted or failed to act as an agent, servant, workman and/or employee who was then and there acting within the scope of his authority and course of his employment with Defendant RTG ,TATS and True North Concepts, LLC, on behalf and in furtherance of the business of Defendant RTG, TATS and True North Concepts, LLC.

8.     True North Concepts, LLC. is a business entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a corporate headquarters and principal place of business located at 805 East College Avenue, Elizabethtown, PA 17022, Lancaster County, Third Circuit, Eastern District of Pennsylvania, and at all times material hereto was owned, operated, maintained and controlled by and through its duly authorized agents, servants, workmen or employees, including Defendant Murr conducting business as a firearms instructor and promoting firearm accessories.

9.     Joshua Prince (hereinafter referred to as "Defendant Prince" or "Prince") is an adult individual residing at 646 Lenape Road, Bechtelsville, PA 19505, Montgomery County, Third Circuit, Eastern District of Pennsylvania, and at all times material hereto, the Defendant acted or failed to act as an agent, servant, workman and/or employee who was then and there acting within the scope of his authority and course of his employment with Defendant RTG, Prince Law Offices, PC, and/or Civil Rights Defense Firm, PC, on behalf and in furtherance of

the business of Defendant RTG, TATS, Prince Law Offices, PC, Civil Rights Defense Firm, PC,

Primal Defense Training LLC and/or True North Concepts, LLC.

10.     Prince Law Offices, PC (hereinafter may be referred to as Prince Law) is a

business entity duly organized and existing pursuant to the laws of the Commonwealth of

Pennsylvania with a corporate headquarters and principal place of business at RD1, Box 73,

Bechtelsville PA 19505, Montgomery County, Third Circuit, Eastern District of Pennsylvania,

and at all times material hereto was owned, operated, maintained and controlled by and through

its duly authorized agents, servants, workmen or employees and Joshua Prince, which engages in

the business of conducting legal work and firearms education.

11.     Civil Rights Defense Firm, P.C. (hereinafter referred to as "Civil Rights Law" is a

business entity duly organized and existing pursuant to the laws of the Commonwealth of

Pennsylvania with a corporate headquarters and principal place of business 934 High Street,

Pottstown, PA 19464, Montgomery County, Third Circuit, Eastern District of Pennsylvania,

(which is a division of Prince Law Offices, PC) and own the fictitious name Firearms Industry

Consulting Group (which is a division of Civil Rights Defense Firm, PC) and at all times

material hereto was owned, operated, maintained and controlled by and through its duly

authorized agents, servants, workmen or employees and Joshua Prince, conducting legal work

and firearms education.

12.     Jared Ross (hereinafter referred to as "Defendant Ross" or "Ross") is an adult

individual residing at 234 Springview Road, Carlisle, PA 17015 and  at all times material hereto,

the Defendant, with Army experience, is the owner, operator, principal of RTG and acted or

failed to act as the owner and an agent, servant, workman and/or employee who was then and

there acting within the scope of his authority and course of his employment with Defendant RTG

and TATS, on behalf and in furtherance of the business of Defendant RTG, TATS, Primal

Defense Training LLC, Prince Law Offices, PC, Civil Rights Law and True North Concepts,

LLC.

13.     Brandon Kehr (hereinafter referred to as "Defendant Kehr" and "Kehr") is an

adult individual residing at 125 Elizabeth Street, Apartment A, East Stroudsburg, PA 18301 and

at all times material hereto, the Defendant, a former Marine, is the owner, operator, principal of

TATS and acted or failed to act as the owner and an agent, servant, workman and/or employee

who was then and there acting within the scope of his authority and course of his employment

with Defendant TATS and RTG, on behalf and in furtherance of the business of Defendant

TATS, RTG, Primal Defense Training LLC, Prince Law Offices, PC, Civil Rights Law and/or

True North Concepts, LLC.

14.     TKD Properties, LLC (hereinafter may be referred to as "TKD") is a business

entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania

and at all times material hereto owned the property located at 103-105 Kramer Avenue,

Stroudsburg, PA 18360 where the incident at TATS occurred and is hereinafter described and

permitted all Defendants to conduct business with the building and on the property that

encompasses this incident and damages described below.

15.     At all times material herein, all Defendants were acting in their individual

capacity and/or as agents, servants, and/or employees of each other and or each other's

companies, acting to further the business, economic and financial interests of each other and/or

each other's company business, and are liable for the negligent acts and omissions of individual

Defendants and/or their companies, under theories of agency, master-servant, respondeat

superior, and right of control.

7

## JURISDICTION AND VENUE

16.     Plaintiffs hereby incorporate paragraphs 1-15 herein by reference as though same were set forth at length.

17.     As alleged in paragraphs 1 and 2, all Plaintiffs are residents of the state of Delaware.

18.     As alleged in paragraphs 3-14, all Defendants are either individual residents of the Commonwealth of Pennsylvania or business entities duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with principal places of business and/or corporate headquarters located within the Commonwealth of Pennsylvania.

19.     The United States District Court for the Eastern District of Pennsylvania has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) as this is a civil action between citizens of different states with an amount in controversy in excess of $75,000.00.

20.     Venue lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(1) in that Defendants RTC, Murr, True North Concepts, LLC., Prince, Prince Law Offices, P.C. and Civil Rights Defense Firm, P.C. reside in said district and all defendants are residents of the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

21.     Plaintiffs hereby incorporate paragraphs 1-15 herein by reference as though same were set forth at length.

22.     RTG is a training company based in Central Pennsylvania that, per its website, "teaches all levels of weapons training" established in late 2010 by Defendant Ross, who has a background as an Army Green Beret, the company's founder and owner, Ross has been in charge

of the day-to-day business operations of RTG full time since 2012. A copy of the "About Us" section of the company's website is attached hereto as Exhibit "A".

23.     Pursuant to the company's website, RTG holds classes throughout the year for its membership, including, but not limited to, seminars, live training and demonstrations on multiple firearms platforms, medical classes, and situational combat training simulations and exercises. A copy of the "Training" section of the company's website is attached hereto as Exhibit "B".

24.     RTG states that they "have some of the most qualified, knowledgeable and well-respected trainers in the country who have used their skills throughout their military and law enforcement careers." See Exhibit "A".

25.     RTG goes on to state that the foundation of everything they teach is the "Rockwell mindset," because "[i]n any situation, the gun is simply the tool. Your mind is the real weapon. And, having the proper mindset can be the difference between failure and success." Id.

26.     TATS is a reality-based firearms and defensive measures training company that "provides training to prepare law enforcement officers, armed professionals and responsible citizens to survive imminent, real world threats." A copy of the "About TATS" section of the company's website is attached hereto as Exhibit "C".

27.     TATS also makes their "shoothouse", a 3,500+ square foot 360 degree complex featuring nearly 20 rooms containing both residential and office spaces replete with vehicles in their simulated garage, available to rent out for a variety of functions and events, and their staff assists renters in "creating an event like no other." A copy of the "Venue Rental" section of the company's website is attached hereto as Exhibit "D". A layout of the shoothouse is attached hereto as Exhibit "E".

28.     On information received, the reality-based training related to this incident, allowed each individual defendant and their respective companies to further the business goals and advertising of each individual and/or their business.

29.     Ultimately, "[e]verything offered at TATS is motivated by gun safety, awareness and fun." See Exhibit "C".

30.     On Monday, September 16, 2019, BRC News 13, a television news agency, interviewed Brandon Kehr and Channel 13 News correspondent Nicole Walters reported in her interview that, "TATS says there's a safety protocol in place to not allow real weapons in the real time shooting scenario. First, they have a separate room where people are directed to store their real weapons in a locker." Kehr encourages participants and instructors to bring live weapons with live ammunition into the TATS building facility shoothouse. See Exhibit "F" – Channel 13 News Interview 9.16.19.

31.     TATS' website depicts photos of real firearms such as Glock, Sig Sauer, and Smith & Wesson handguns, as well as AR-15 rifles that are chambered to shoot non-lethal paint or chalk marking rounds of ammunition. A copy of the "Our Guns" section of the TATS website is attached hereto as Exhibit "G"

32.     On the RTG website, there is a class description for RBT (Reality Based Training called "RBT Dynamic Force on Force 102", and RTG states, "The day will be spent with live role players using UTM guns. Safety gear will be provided, and you should bring your normal EDC set up. If you don't have a holster or mag pouches that will accommodate Glock 17, loaners will be available." A copy of the "Force-on-Force" section of the RTG website is attached hereto as Exhibit "H".

33.     Ultimate Training Munitions, Inc. (hereinafter may be referred to as "UTM" and at all times material herein was the manufacturer of conversion kits created to allow real firearms to shoot paint-filled "man marking rounds" and said conversion kits were utilized by RTG in their force-on-force training, the particulars of which are described herein.

34.     The less-lethal versions of these firearms are typically identified by brightly colored markings on the chamber, handgrip, ammunition clip, and/or barrel of the weapon. In order to fire the UTM man-marking rounds, live round firearms are converted using a special slide, chamber, and spring mechanism that is designed specifically to "lock out" live rounds as a safety feature. See Exhibit "G". See also a copy of the "Firearms Conversion" section of Ultimate Training Munition's website, attached hereto as Exhibit "I".

35.     The slide contained in UTM's conversion kit contains blue markings on the side to distinguish it from the slide of a real firearm. However, when contained in a holster, the blue markings are not visible to the naked eye, whereas there are modified gun companies that produce an all blue or all pink gun so that it can be distinguished as a modified less than lethal munition See Exhibit "I".

36.     On information received, the aggressor role players during this incident hereinafter described were shooting range instructors Josh Prince and Cody Saylor.

37.     The UTM safety guidelines state that there should always be a "Primary Safety Controller" who should initially "inspect the training area and require all participants on site to double check and confirm there are no "live" duty weapons, "live" back-up weapons, "live" ammunitions, edged weapons, live chemical spray or duty impact weapons in the training area". The guidelines go on to state that the Primary Safety Controller should enforce the "Buddy Check" and "Check Twice" systems, and that "[i]t is the responsibility of every Role Player and

Aggressor involved in the training scenarios to be familiar with the weapon system being used, wear protective safety equipment, safety clothing and adhere to all safety requirements". Prior to the shooting incident which ultimately injured Plaintiff Darin McMahon, none of the aforementioned safety procedures were followed. In fact, as stated Kehr had made it clear that everyone should bring their live weapons with live rounds into the facility for safekeeping. A copy of the UTM safety guidelines is attached hereto as Exhibit "J".

38.     UTM makes it clear that "UTM's Man-Marking cartridges are designed for professionals. UTM's products are intended only for use in supervised law enforcement and military training conducted in accordance with UTM's guidelines for use and safety recommendations." On September 15, 2019, the reality-based training was not for law enforcement or military training and instead participants were non-military and non-law enforcement. See Exhibit "J".

39.     On information received, on Sunday, September 15, 2019, Plaintiff Darin McMahon entered the TATS "shoothouse" facility to participate in situational, reality-based firearms training "RBT" simulations for the second day of a recreational, weekend-long trip.

40.     Channel 13 news outlet spoke with the Stroud Area Regional Police Department who confirmed that RTG rented the facility from TATS.

41.     On an episode of "Concealed Carry Gunfighter", from the Captain Berz YouTube Channel, Defendant Murr, a former Marine who holds himself out as an instructor and "gunfighter" while promoting his firearms accessories, talks about his experience as an instructor and he admits that "I'm not that qualified, I learned mostly from citizens and not military." He admits to having recurring dreams wherein he shoots a "scumbag" in the head at point blank

range because the scumbag stole his dog. A screenshot of the YouTube interview is attached hereto as Exhibit "K".

42.     On PrinceLaw.com, the website for Prince Law Offices, P.C., in an effort to attract potential legal clients, Defendant Prince touts his "Honors and Awards" – detailing his Gun Instructor licenses and certifications including: (1) National Rifle Association (hereinafter "NRA") Certified Chief Range Safety Officer, (2) NRA Certified Basic Pistol Instructor, (3) NRA Certified Personal Protection in the Home Instructor, and (5) NRA Certified Home Firearm Safety Instructor. A copy of the "Honors and Awards" section of Defendant Prince's website bio is attached hereto as Exhibit "L". On September 15, 2019, Prince embedded himself in the RBT in an effort to bolster his resume as a shooting instructor and to present legal advice in an effort to attract potential clients.

43.     Defendant Saylor advertises his shooting prowess on the internet depicting himself in the water bottle challenge shooting the top off of a water bottle with a pistol. In another advertisement on his Facebook page, he drops to his back and fires a weapon between his legs at the camera. As stated above, he holds himself out to the public as a firearms instructor. Photos of Saylor's shooting advertisements are attached hereto as Exhibit "M".

44.     On the Primal Defense Training Facebook page, Cody Saylor states, "Message me to book your first private lesson…Primal Defense Training offers private firearms lessons…Get 1 on 1 attention at your own learning pace…. I have 7 years and well over 300 hours of dedicated training experience and counting…From beginners to experienced, you will learn to use and apply firearm as a tool for self-defense." A copy of the Primal Defense Training Facebook advertisement is attached hereto as Exhibit "N".

45.     On the Primal Defense Training Facebook page, Cody Saylor states, "So this is my little project called @primaldefensetraining. I formed this strictly to do private lessons and maybe some other small ventures and go from there…Times aren't looking so comfortable anymore, maybe it's time for you to get to work. Learn to shoot, learn to fight." A copy of the Primal Defense Training Facebook post, dated August 20, 2019, is attached hereto as Exhibit "O".

46.     Jared Ross was not present for the weekend at TATS, but allowed TATS, Murr, Prince, Saylor, Kehr and the customers including Darin McMahon to use his UTM guns for training.

47.     On information and belief Ross hired, retained and failed to supervise TATS, Murr, Prince, Kehr and Saylor and the work of the other defendant entities.

48.     On information and belief, and as seen on customer videos and social media posts, RTG has performed dangerous training activities on occasion prior to the September 15, 2019 incident and the owner of TATS, Defendant Kehr was aware of RTG's practices.

49.     In an article written for the Pocono Record on September 16, 2019, Kehr stated "We are familiar with the company that was in here," Kehr said, "We've dealt with them several times, a handful of times. They're very stand up guys; they're very good at what they do. It's just unfortunate that this incident happened. It's a shame." A copy of the September 16, 2019 Pocono Record article is attached hereto as Exhibit "P".

50.     In numerous dangerous incidents wherein safe shooting practices, protocols and procedures were not followed, an RTG instructor directed customers at a shooting range to shoot down range between the heads of other customers with live rounds as they walked across and

behind the other customers. Defendant Saylor was an instructor wherein he assisted, learned

from and demonstrated for the lead instructor in some of these dangerous incidents.

51.    In another incident, an RTG instructor was asked on social media by Dame

Michael, "Do you carry a real BUG [real gun with real ammunition] for simulation training?

RTG instructor Garry Marr answered, "My mindset says not to let someone disarm you. I've

carried guns through metal detectors, snuck them into federal prison and courthouses. I'm surely

not letting the dude in the fancy red hat with scrambled eggs on the bill do it." A copy of the

exchange is attached hereto as Exhibit "Q".

52.    On information and belief, the weekend of Saturday September 14 and Sunday

September 15 at the TATS shoothouse, RTG, TATS and the individual instructors were

conducting RBT training simulations that were separated into two sessions, one in the morning

and one in the afternoon with a break for lunch in between.

53.    On information and belief, Kehr was present on Saturday and Sunday mornings at

the TATS shoothouse assisting as the host. Consistent with his post-incident interview with the

news media, Kehr told the customer group and instructors that the parking lot area was shady

and that they should bring their personal live weapons out of their cars and bring them into the

facility. Lockers were provided in the facility, but they were not locked. Some of the customers

and instructors brought live weapons into the facility per Kehr's instruction. Kehr sold TATS

merchandise to the customers and opened his facilities including the bathrooms and situational

force-on-force scenario rooms to all customers. Kehr offered TATS safety gear to the customers

as well.

54.    On information and belief, prior to entering the situational training area of the

facility, each customer was supposed to be frisked, but a standard frisk procedure was not

performed, participants did not observe each pat down each time and the pattern of safety procedure was allowed to be interrupted and skewed.

55.     On information and belief, none of the defendants had any personnel or security present to ensure that no live-round firearms entered the "shoothouse" and/or the training area, nor did TATS have any security measures in place, such as a door-frame metal detector. While TATS has handheld electronic metal-detecting wands available at the "shoothouse", they were not required to be utilized. Further, because the UTMs are real metal handguns, a detecting wand is futile unless used safely according to proper safety policies, procedures and protocols.

56.     While TATS utilized video to record scenarios for customers and instructors to view after each scenario session, TATS did not utilize surveillance cameras to observe or record if customers or attendees entered with live weapons. On information and belief, Kehr operated the recording device.

57.     On information and belief, the defendants, including TATS, RTG, Kehr, Murr, Saylor and Prince, did not frisk customer attendees appropriately nor were metal detector wands utilized.

58.     On information and belief, Sunday, September 15, 2019, the group of customers left the TATS facility after the morning session for a lunch break and returned to the TATS facility for their afternoon session.

59.     On information and belief, after lunch and upon return to TATS, Prince gave legal advice to all, stating that if the police ever want to speak to you because you were involved in a self-defense justification shooting, you should tell the police you are having heart palpitations and you need an ambulance so that the police cannot get a statement.

60.     On information and belief, Darin McMahon needed to leave early due to a family commitment and Murr told the group that he would try to squeeze in as many scenarios as possible in the time provided.

61.     On information and belief, Murr apprised the group that he is in the business of selling accessories for firearms and promoted True North Concepts, LLC.

62.     On information and belief, in direct violation of known safety standards, none of the instructors or customers were frisked for live weapons, nor was a metal detector utilized, prior to entering the TATS facility, staging area, lecture area or shoothouse situational training area of the facility at the start of the September 15, 2019 afternoon session.

63.     On information and belief, instructor role players Cody Saylor and Josh Prince did not frisk each other on September 15, 2019 just prior to the incident despite being instructor role players in the shoothouse awaiting Plaintiff's entry for the force-on-force scenario. Murr and Kehr did not frisk Saylor or Prince.

64.     On information and belief, on September 15, 2019, the plan for the afternoon session was a car situation scenario in which, one by one, and accompanied by the instructor Defendant Murr, each participant would enter the shoothouse and react to the force on force scenario as aggressor role players Defendant Saylor and Defendant Prince awaited the entry of the customer. Murr was acting only as an observing instructor and was not a shooter. The two instructor role players Prince and Saylor and customer Darin McMahon were supposed to be equipped with UTM guns. Cody Saylor entered the facility, staging area and the shoothouse as an instructor role player with a live weapon with live bullets because he forgot to "switch out" his real live gun and ammo for a UTM with non-lethal marking rounds and because he was not frisked by Murr or Prince.

65. On information and belief, prior to entering the shoothouse scenario Plaintiff Darin McMahon was supplied a UTM gun. Darin McMahon was the first participant, and he was instructed by Murr to enter the shoothouse and react to the situation. Murr followed Darin McMahon as an observer and was not a role player firing a UTM weapon.

66. On information and belief, in the ensuing scenario, Plaintiff Darin McMahon was shot by Cody Saylor in the neck area in the presence of instructors Murr and Prince. Customers Sean McMahon, Jon Roder and Ted Dabbs were only a few feet away when they heard paint round UTM ammunition being fired. Suddenly, they heard one louder, live round sounding "bang" of live weapon fire and rushing to Darin McMahon's aid observed the bloody aftermath just seconds later.

67. Medical safety kits were not available in each room, and said kits were not carried by instructors. Instructors did not have the licenses, training or certifications for lifesaving, CPR and medical treatment.

68. On information and belief, on September 15, 2019, Plaintiff Darin McMahon was flown to Lehigh Valley Hospital via helicopter. An x-ray of Darin McMahon's head and cervical spine reveals a live 9mm round tore into Darin McMahon's neck, lodging in the C-6 spinal cord, leaving Darin a quadriplegic, which has caused him to lose functioning and feeling below his neck. A copy of the Certification of Healthcare Provider for Family Member's Serious Health Condition is attached hereto as Exhibit "R". A copy of the X-Ray depicting the bullet lodged in Darin McMahon's spinal cord is attached hereto as Exhibit "S".

69. On information and belief, Prince and Plaintiff Darin McMahon were utilizing UTM guns, but Cody Saylor's 9mm Glock with live ammunition was found in the shooting area near the almost fatal car scenario incident proving that Saylor shot Plaintiff Darin McMahon.

70.     On information and belief, Saylor told the police he was having heart palpitations and that he needed to go the hospital and he refused to talk about the incident.

71.     On information and belief, Prince told the police that he represented Murr and Saylor and that Murr and Saylor would remain silent with regard to the incident.

72.     On information and belief, Cody Saylor was represented by Eric Winter, Esquire from the Prince Law Offices and he agreed to be interviewed by police days after the September 15, 2019 incident, wherein he admitted that he was not frisked, and that he accidentally carried his real gun with real ammunition into the RBT scenario, shooting the victim, Plaintiff Darin McMahon, in the neck with his 9mm handgun causing the injuries.

73.     On information and belief, the video of the scenario depicting Cody Saylor shooting Plaintiff McMahon causing the injuries was secured by the Stroud Area Regional Police Department.

74.     All defendants, including TATS training facility, instructor Kehr, RTG, instructor Murr, and instructor-role players Saylor and lawyer Prince failed to create the safe and professional training environment McMahon and the other participant customers had ample reason to believe it would be, and they did not follow accepted safety protocols, procedures and policies.

75.     On Tuesday, September 17, 2019, Defendant Ross stated in a social media video, approximately 1 minute and 9 seconds in length, posted to Facebook and YouTube, that "a horrible accident occurred at one of our training facilities. . . clearly our standing and written safety protocols were not followed." A screenshot of the video statement is attached hereto as Exhibit "T".

76.     RTG also posted a written statement on their website stating, "On Sunday September 15, an unfortunate incident occurred during one of our classes. RTG had rented the facility from Threat Assessment and Tactical Solutions Group, LLC. A participant was injured and hospitalized. . . [a]s a consequence, for the time being RTG will not be adding anymore class dates. We will still honor and hold the existing classes on the schedule. They will be run by Jared, personally." A copy of the statement posted to RTG's website is attached hereto as Exhibit "U".

77.     In an interview with a news outlet Kehr stated, "his company is currently considering future rentals and regulations for the use of the facility. This could include establishing Threat Assessment and Tactical Solutions as "safety officers" for third-party events, whereas previously, the company allowed those groups to operate relatively autonomously. "We're still trying to figure out what we want to do as far as welcoming third-party companies in here again," Kehr said. "If we choose that as a route that we want to go, then we are going to elevate the safety protocols that each company has to adhere to before they can even be considered." See Exhibit "P".

78.     In another news article, Kehr admits, "before anyone goes into the shooting zone a safety briefing is done and this includes a metal detecting wand." "In front of our students we wand the instructor and role players in front of the students as well as wanding the students." A copy of the Channel 69 news article published on September 17, 2019 is attached hereto as Exhibit "V".

79.     Channel 13 news correspondent Nicole Walters interviewed Kehr and on September 16, 2019 reported that TATS stated there is a protocol prior to entering the scenario where, "TATS has a safety protocol in place to not allow real weapons in the real time shooting

scenario....Then before anyone enters the scenario a metal detector wand is used to make sure no one has anything dangerous on them." She goes on to state that, "We are told that Rockwell Tactical Group had its own safety protocols even though the wands were available to them." Screenshots of the news interview are attached hereto as Exhibit "W".

80.     According to the article, Kehr plans on changing the protocol to ensure that he has the final say on safety whether he is directly involved or not. Kehr stated, "Instead of being that facility that just opens its doors, it is going to have to be that overall safety monitor." See Exhibit "V".

81.     On September 16, Channel 13 news correspondents George Roberts and Marie Johns introduced a television production prepared by news reporter Nicole Walters wherein they published an audiovisual interview with Brandon Kehr wherein he admits, "We now know that if we want any other training organizations to come in and use our facility that we are now going to implement even harsher safety protocols that they have to abide by because our standards for safety were completely different than unfortunately what was utilized yesterday." A screenshot from the Channel 13 Interview on September 16, 2019 is attached hereto as Exhibit "X".

82.     In the same interview as above, Kehr states, "The training organization that was here yesterday, again it was unfortunate, but again they are a good group of guys. I do know them, they have been here several times before and have trained."

83.     In another news article, Stroud Area Regional Police Chief Jennifer Lyons stated, "I believe a crucial safety step was missed." In another article she stated, "The victim was shot with a real gun containing a live round of ammunition." A screenshot from the Channel 13 interview of Chief Lyons on September 16, 2019 is attached hereto as Exhibit "Y". See also Exhibit "V".

84.     On information and belief, RTG supplied UTM guns and paint marking rounds and protective masks, and TATS made other protective gear available for use including throat protectors. While TATS possessed metal detector wands, said equipment was not utilized.

85.     On information and belief, the TATS shoothouse contains upwards of 17 rooms, there was no requirement for participants and instructors to be frisked for real weapons and real rounds in a secure locked area prior to entering the shoothouse, nor was a second check for real weapons and real rounds conducted in a separate secure room where the UTMs and paint marking rounds were provided prior to entering the shoothouse.

86.     On information and belief, Stroud Area Regional Police Department issued search warrants on RTG and TATS to secure, among other things, the rules and regulations regarding safety policies, procedures and protocols.

87.     The TATS participant waiver states at paragraph number 5 that participants "assume the risk of non-lethal rounds causing injury." The waiver does not contemplate assuming the risk of lethal rounds being used in scenarios which is grossly negligent and reckless. A copy of the TATS participant waiver is attached hereto as Exhibit "Z".

88.     At paragraph 2, the TATS waiver states participants must follow "safety rules, range procedures, and directives, whether written or oral, of TATS." Yet, no rules are posted within the shoothouse and none were provided by any instructors to customers or instructors. Id.

89.     On the TATS website in the Code of Conduct section it is stated, "No live ammo, firearms, or knives in the training facility period." "Practice safe gun handling at all times." Of course, this Code was not followed as Kehr encouraged everyone to bring real guns and ammunition into the facility. A copy of the TATS Code of Conduct is attached hereto as Exhibit "AA".

90.     Despite knowing that Murr, Kehr, Prince and Saylor held themselves out as instructors, but were not adequately trained, qualified or certified to be instructors, Ross and RTG allowed the aforementioned to host the customers at the shoothouse and direct the days events in an unsafe manner as individuals, agents of RTG, agents of TATS and agents of their own companies.

91.     Despite knowing that Murr, Kehr, Prince and Saylor held themselves out as instructors, but were not adequately trained,  qualified or certified to be instructors, and knowing that Ross was not present, Kehr and the property owner TDK Properties allowed the aforementioned to host the customers at the shoothouse and direct the day's events in an unsafe manner as individuals, agents of TATS, agents of RTG and agents of their own companies.


## COUNT I – NEGLIGENCE

### Plaintiff Darin McMahon v. All Defendants

92.     Plaintiff Darin McMahon incorporates paragraphs 1-91 by reference herein, as though same were set forth at length.

93.     Plaintiff's injuries and damages were caused by the negligence, carelessness and recklessness of the Defendants conduct as described herein.

94.     As described more fully above, Defendants owed a duty to Plaintiff Darin McMahon to keep him out of harm's way and to ensure that instructor-role player Cody Saylor did not use a real weapon during the force-on-force scenario training.

95.     Defendants breached their duty to Plaintiff Darin McMahon by engaging in Reality Based Training force on force negligently, recklessly and carelessly, which caused serious injuries and damages to Plaintiff as described more fully above.

96.    Defendants' breaching actions and failures to act, consisted of, *inter alia*:

(a) failing to follow proper safety regulations for their training seminars;

(b) failing to have and to require and ensure that particular safety policies, procedures and protocols were followed;

(c) permitting or failing to prevent negligent or otherwise tortious conduct upon premises or with instrumentalities under Defendants' control, including allowing real live weapons into the building;

(d) failing to ensure that real guns with real bullets were not used in the training seminar;

(e) failing to prohibit real guns with real bullet rounds from entering the building facility and/or failing to enforce rules, regulations, and safety policies, procedures and protocols requiring that real guns with real bullets do not enter the facility;

(f) allowing and permitting real guns with real bullets in the TATS facility;

(g) failing to utilize UTM safety guidelines;

(h) failing to train participants on UTM safety guidelines, including, but not limited to, failure to check twice and utilize the buddy system;

(i) allowing non-law enforcement and non-military participants to use UTM modified handguns and UTM Man-Marking rounds;

(j) allowing and conducting legal presentations during training breaking the pattern of safety;

(k) rushing through training and breaking the pattern of safety;

(l) failing to frisk or utilize a metal detecting wand responsibly;

(m) utilizing instructors that were not properly licensed and certified in

fundamental, appropriate UTM and firearm safety;

(n) utilizing instructors with a history of dangerous practices while training;

(o) utilizing instructors that were trained under dangerous practice conditions;

(p) failing to have a medical kit in the room wherein RBT was conducted;

(q) failing to have instructors trained, licensed and knowledgeable in appropriate

safety, CPR and medical life-saving procedures;

(r) failing to have measures in place to contact emergency personnel immediately;

and

(s) in other such ways as may be revealed through the normal course of discovery.

97.     As a direct result of Defendants' actions and failures to act, Defendant Saylor

entered the shoothouse equipped with a live handgun while acting out a live scenario, instructors

Murr and Prince did not frisk him, and Kehr allowed live weapons into the building.

98.     As a direct result of Defendants' actions and failures to act, Defendant Saylor shot

Plaintiff with his live handgun in the neck, paralyzing Plaintiff.

99.     As such, all Defendants are directly and vicariously liable for the negligent,

careless and reckless conduct of all Defendants, as outlined in the allegations above.

100.    As a result of Defendants' negligence, recklessness and carelessness and/or

reckless disregard, Plaintiff Darin McMahon has suffered physical injuries, pain and suffering,

emotional distress, and mental anguish.

WHEREFORE Plaintiff Darin McMahon demands judgment in his favor and against

Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus

costs, interest and delay damages.

## COUNT II – NEGLIGENT HIRING, RETENTION, AND SUPERVISION

### Plaintiff Darin McMahon v. Defendants Rockwell Tactical Group, LLC. and Threat Assessment and Tactical Solutions Group, LLC.

101.    Plaintiff Darin McMahon incorporates paragraphs 1-100 by reference herein as though same were set forth at length.

102.    The shooting and all of the injuries and damages sustained by Plaintiff Darin McMahon were the direct and proximate result of the negligent actions and inactions of RTG and TATS in hiring and retaining all Defendants including Ross, Kehr, Murr, Saylor and Prince, consisting of, inter alia:

(a) hiring and/or retaining instructors with knowledge and notice of the instructor's unsafe, reckless and/or negligent use of firearms;

(b) hiring and/or retaining instructors with knowledge and notice of unsafe, reckless and/or negligent use of firearms;

(c) hiring and/or retaining instructors that were not adequately trained or certified to be UTM or firearms instructors;

(d) failing to properly supervise employee firearms instructors and role players during reality-based force on force training;

(e) failing to have proper safety policies, procedures and protocols in place;

(f) failing to give safety orders to employee firearms instructors and role players;

(g) giving improper or ambiguous safety orders;

(h) failing to require and ensure that proper safety policies, procedures and protocols were followed;

(i) employing improper persons and/or instrumentalities in work clearly involving risk of harm to others;

(j) failing to properly supervise the dynamic force-on-force training seminar;

(k) permitting or failing to prevent negligent or otherwise tortious conduct upon premises or with instrumentalities under RTG and TATS control;

(l) failing to properly vet and ensure that employee instructors and role players had adequate training, certification, and licensure in the use of both live firearms and UTM modified firearms;

(m) permitting instructors and role players who were not adequately trained, certified, and licensed in using live firearms and UTM modified firearms and ammunition to lead dynamic force-on-force training scenarios;

(n) permitting known dangerous training instructors and companies to host RBT on premises and at TATS;

(o) hiring and retaining instructors that were not properly trained in CPR, lifesaving and medical treatment; and

(p) in other such ways as may be revealed through the normal course of discovery.

103.    As a direct result of Defendants' actions and failures to act by Defendants, Defendant Saylor shot Plaintiff with his live handgun in the neck, paralyzing Plaintiff.

104.    As such, Defendants RTG and TATS are directly and vicariously liable for the negligent, careless and reckless conduct of Defendants Ross, Kehr, Saylor, Murr, and Prince, as outlined in the allegations above.

105.    As a result of Defendants' negligence, recklessness and carelessness and/or reckless disregard, Plaintiff Darin McMahon has suffered physical injuries, pain and suffering, emotional distress, and mental anguish as outline more specifically in the count for damages below.

WHEREFORE Plaintiff Darin McMahon demands judgment in his favor and against Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus costs, interest and delay damages.

## COUNT III – NEGLIGENCE

### Plaintiff Darin McMahon v. TKD Properties, LLC

106.    Plaintiff Darin McMahon incorporates paragraphs 1-105 by reference herein, as though same were set forth at length.

107.    Defendant TKD owed a duty to Plaintiff Darin McMahon to keep him out of harm's way and to ensure that only activities that were safe for customers and possibly outlined in the lease agreement between TKD and TATS were conducted in a manner that was safe and consistent with the provisions of said lease.

108.    The shooting and all of the injuries and damages sustained by Plaintiff Darin McMahon were the direct and proximate result of the negligent actions and inactions of Defendant TKD, consisting of, *inter alia*:

> (a) failing to enforce the provisions of the lease agreement for the premises so that no live firearms were brought onto the premises and to prevent other dangerous activities such as reality-based training;

(b) failing to warn lessee that if live firearms were brought onto the premises, the lease would be terminated;

(c) failing to terminate the lease when Defendant TKD knew or should have known that live firearms were brought onto the premises and dangerous, unsafe practices and activities were occurring on said property and in the building;

(d) failing to discover that live firearms were brought onto the premises and unsafe practices, policies and procedures were utilized at TATS;

(e) allowing live firearms to continue to be brought on the premises;

(f) failing to inspect to ensure that live firearms were not being brought onto the premises and inspecting for dangerous, hazardous activities;

(g) failing to use reasonable prudence in the care and maintenance of the premises;

(h) failing to warn guests, invitees and other foreseeable users, and Plaintiff Darin McMahon in particular, of the existence of live firearms on the premises;

(i) permitting and allowing business invitees to walk in and about the premises when Defendant knew or should have known that live firearms were being brought onto the premises;

(j) failing to post adequate warning signs, barriers and/or barricades in an effort to alert business invitees/licensees of the existence of live firearms on the premises and/or to alert business invitees/licensees that firearms were not permitted on the premises;

(k) failing to ensure that Defendant's lessee was providing a safe environment for guest, invitees and other foreseeable users of the premises;

(l) permitting or failing to prevent negligent or otherwise tortious conduct by persons, whether or not servants or agents, upon premises or with instrumentalities under Defendant's control;

(m) allowing TATS and RTG to conduct unsafe, hazardous reality-based force-on-force training and advertising and conducting same including, but not limited to, "Purge" and "Wick Mode" events allowing head and neck shooting; and

(n) in other such ways as may be revealed in the normal course of discovery.

109.    As a direct result of Defendants' actions and failures to act, Defendant Saylor shot Plaintiff with his live handgun in the neck, paralyzing Plaintiff.

110.    As such, Defendant TDK is vicariously liable for the negligent, careless and reckless conduct of all Defendants, including TATS, RTG, Saylor, Murr, Prince, Kehr and Ross as outlined in the allegations above.

111.    As a result of Defendants' negligence, recklessness and carelessness and/or reckless disregard, Plaintiff Darin McMahon has suffered physical injuries, pain and suffering, emotional distress, and mental anguish.

WHEREFORE Plaintiff Darin McMahon demands judgment in his favor and against Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus costs, interest and delay damages.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### Plaintiff Tiffany McMahon v. All Defendants

112.    Plaintiff Tiffany McMahon incorporates paragraphs 1-111 by reference herein, as though same were set forth at length.

113.    The conduct of Defendants as set forth above has caused Darin McMahon's wife, Plaintiff Tiffany McMahon, severe psychiatric injuries and emotional distress consisting of, <u>inter alia:</u>

(a) the fear of the bullet lodged in Darin McMahon's spinal cord migrating and causing additional severe injury, including, but not limited to, neurological damage and/or death;

(b) the forced lifestyle changes of both Plaintiffs due to being deprived of Darin McMahon's physical movement, need for alterations to their home, vehicles and medical equipment and assistance, and the loss of life's pleasures to which they had become accustomed; and

(c) the recurring and debilitating fear of movement/migration of the bullet which would cause further damages including death.

114.    The aforementioned severe psychiatric injuries and emotional distress have directly caused a physical impact on Plaintiff Tiffany McMahon, including, but not limited to, post-traumatic stress, inability to sleep, inability to eat, headaches, nausea, anxiety, depression and nightmares.

WHEREFORE Plaintiff Tiffany McMahon demands judgment in her favor and against Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus costs, interest and delay damages.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### Plaintiff Sean McMahon v. All Defendants

115.    Plaintiff Sean McMahon incorporates paragraphs 1-114 by reference herein, as though same were set forth fully at length.

116.    The conduct of Defendants as set forth above has caused Plaintiff Sean McMahon severe psychiatric injuries and emotional distress.

117.    Plaintiff Sean McMahon is the brother of the shooting victim Darin McMahon.

118.    Plaintiff Sean McMahon was one of the first on scene and did witness his brother, Plaintiff Darin McMahon, lying in a pool of blood and turning purple as a result of being shot in the neck by Defendant Saylor.

119.    Further, Plaintiff Sean McMahon gave mouth-to-mouth resuscitation to his brother after the shooting, and he assisted or observed others holding Darin McMahon's neck to stop the loss of blood coming from the neck, observed or assisted in giving chest compressions and observed or assisted in seeing ambulance medical personnel giving life-saving support to Darin McMahon.

120.  The aforementioned severe psychiatric injuries and emotional distress have directly caused a physical impact on Plaintiff Sean McMahon, including, but not limited to, post-traumatic stress, sleep, inability to eat, headaches, anxiety, depression and nightmares.

WHEREFORE Plaintiff Sean McMahon demands judgment in his favor and against Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus costs, interest and delay damages.

## COUNT VI – LOSS OF CONSORTIUM

### Plaintiff Tiffany McMahon v. All Defendants

121.    Plaintiff Tiffany McMahon incorporates paragraphs 1-120 by reference herein, as though same were set forth at length.

122.    As a result of the incident described more fully above, Plaintiff Tiffany McMahon has been obliged to expend various and diverse sums of money for medicine and medical attention and care in and about an effort to cure her husband, Plaintiff Darin McMahon, of the injuries which he suffered and probably will in the future be obliged to continue to make such expenditures, all to her great and continuing detriment and loss.

123.    As an additional result of the incident described more fully above, Plaintiff Tiffany McMahon has been unable to attend to her usual daily duties, occupation, labors and chores, and she has been deprived of the companionship, comfort, services, assistance and consortium of her husband, Plaintiff Darin McMahon, and all of this may continue for an indefinite time in the future, all to her great and continuing detriment and loss.

WHEREFORE Plaintiff Tiffany McMahon demands judgment in her favor and against Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus costs, interest and delay damages.

## COUNT VIII – Damages

### Plaintiff Darin McMahon v. All Defendants

124.    Plaintiff Darin McMahon incorporates paragraphs 1-123 by reference herein, as though same were set forth fully at length.

125.    As a direct and proximate result of the Defendants' conduct described above, Plaintiff Darin McMahon sustained serious injuries to his body and limbs, including but not limited to, making him a quadriplegic with total loss of feeling and movement from the neck down, requiring life support, tracheotomy, ventilator and twenty-four hour care, which is permanent and has caused him to seek extensive medical treatment now and into the future to pay for future medical bills, care and equipment.

126.    As a result of the Defendants' conduct described above, Plaintiff Darin McMahon has been or will be obligated to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses for treatment of the injuries he has suffered, and he may be obligated to continue to spend such sums and incur such expenses for an indefinite time into the future.

127.    As a further result of the Defendants' conduct, Plaintiff Darin McMahon has suffered past severe physical pain, mental anguish and humiliation and he will continue to suffer same for an indefinite time into the future.

128.    As a further result of the Defendants' conduct, Plaintiff Darin McMahon has or may hereafter incur other financial expenses or losses, and he may be obliged to continue to expend such sums or incur such expenditures for an indefinite time in the future, including, but not limited to, wage loss, loss of future earnings and lost business opportunities.

129.    As a further result of the Defendants' conduct, Plaintiff Darin McMahon has suffered a loss of life's pleasures and has been unable to pursue his normal daily activities and occupations all to his great detriment and harm and all of which he may suffer for an indefinite time into the future.

130.    The conduct of Defendants as set forth above constitutes such egregious, outrageous and reckless disregard or indifference to the safety of others and human life that an assessment of punitive damages is necessary and just.

WHEREFORE Plaintiff Darin McMahon demands judgment in his favor and against Defendants in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus costs, interest, punitive damages and delay damages.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury in this matter.

Respectfully submitted,

THE McCLAIN FIRM

BY: _____
Cary B. McClain, Esq.

_____
Robert M. Abernethy, Esq.

Attorneys for Plaintiffs

Date: 11/8/2019

## <u>VERIFICATION</u>

I, Cary B. McClain, Esquire, state that I am the attorney for the plaintiffs in this matter and the facts set forth in the foregoing Civil Complaint are true and correct to the best of my knowledge, information and belief. I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2019

_____
Cary B. McClain, Esquire.